Good afternoon. Please be seated. We're here for in-bank hearing in the State of Arizona and Angela Aguilar v. ASARCO. Council ready? Okay. You may proceed. May it please the Court, my name is David Barton. I am with the law firm of Burns-Barton. I proudly represent the defendant appellant in this case, ASARCO. We are here today because the court below made an enormous error when it assigned the maximum amount of punitive damages to a case which was not anywhere near the top of the punitive damages scale. That was a jury award, right? The jury award was more than what the court remitted it to, the $300,000. The court picked the statutory cap as the amount that he would remit or remand the case down to remit the case to. That's correct. In reality, this is a rather simple case because all that we are asking the court to do is review de novo the facts of this case and place it at the low end of the punitive damages scale where it belongs. We're doing that because punitive damages are reserved for the most egregious of cases. They are aimed at retribution. The jury didn't think it was at the low end, right? The jury, Your Honor, unfortunately, considered evidence that should never have been presented to them when they made their award. I understand, but putting that issue aside, which we can get to, assuming that you don't succeed on that issue, the jury assessed it and they didn't think it was trivial. I mean, they could have given $10 a punitive damage. They could have given $20 a punitive damage. They could have given $2,000 a punitive damage. They could have given $100,000 a punitive damage. They didn't do any of those things. They gave closer to $800,000? $868,000, Your Honor. So it's closer to $900,000. $868,000, yes. Okay. So the jury must have thought it was not so trivial. Again, if the jury had been allowed to consider the evidence only related to Ms. Aguilar, they probably would have... No, no, I understand. And I know you want to talk about that issue, and I think we'll get to that issue. But just assume you're going to lose on that issue for purposes of my question. So just to make things simple. It's a hard assumption to make, but I'll do it. Oh, I don't know. I think that's where you went to law school. I will assume that, Your Honor. So just assume. It doesn't mean you will lose. I'm just saying, assuming that all the evidence came in was proper and went to the jury, the fact is the jury thought it was pretty serious stuff. The jury awarded $868,000. That is correct, Your Honor. No, no. I say potato, and you say potatoe. Did you hear my question? I'm going to ask it one more time, and then I'm going to give up. The jury thought it was pretty serious. Yes or no? Not something else. The instructions... The reason I'm having difficulty with your question, Your Honor... Okay, I give up. Go ahead. I'm not going to... Go ahead with something else. Go ahead with something else. Yes or no? I don't know what the jury thought. I know what the jury awarded. You also know what the jury instructions were for awarding punitive damage. That is correct. And if you look at those punitive damage instructions and look at their award, his question seems pretty easy for you. Yes. Yes, they certainly found... But you want to emphasize it by making me really sort of ask it again and again so there's no doubt for anybody's mind in the courtroom, so, you know, to just help to drive the point home. I'm sorry, Your Honor. Right? You should be sorry. I'm a trial attorney. And your client should be sorry. I hope you don't bill him for the last 10 minutes. Okay. The jury, yes, thought it was a significant amount of work, a penalty, I guess. One thing I didn't understand is you began by saying as if there was a gradation of punitive damages, and I assume that you seemed to be shifting from what I understand your brief to have been about to think that the $300,000 cap is essentially a gradation of punitive damages and that it's within that that we ought to be reviewing. That's not the way I understood your brief, but is that what you're saying now? We're saying $300,000 in a Title VII case is the maximum award, yes. And, therefore, there should be a grading within it. But, of course, $300,000 isn't necessarily punitive damages. That's correct. Indeed, on your theory, it's kind of strange because the more you get in compensatories actually into this statute, the less you can get in punitives. Well, under the way the statute is framed, yes, $300,000 is the total cap of compensatory and punitive damages.  You get less in punitives the more you get in compensatories. That is how the statute operates, yes. And, therefore, it may make more sense to look at it as a congressional determination as to the total amount of any kind of damages there should be, and that's the whole of the story on the whole BMW line of cases. It's just not relevant. Well, the problem with accepting the fact that $300,000 makes everything else irrelevant is that advocates this Court's responsibility to evaluate punitive damages. Well, yes, it might. That's what I'm suggesting. It might. That's correct. And, so, unless... I mean, it's not like we enjoy making that determination. We do it because we have to do it if there are sort of no upper limit. We have to sort of engage in some sort of weighing for due process purposes. But what Congress has done the way, why isn't this a time for the Court to check out? Because... Another branch of government, two other branches of government have a rule on it, and they've made their way. The people have spoken. The reason this Court should not check out is because this Court has a duty under the Constitution and under all of its jurisprudence to date to evaluate punitive damages to make sure that they have a reasonable... But that's the answer, not the question. That's the question, not the answer. I mean, the question is, does that duty exist where Congress has spoken? Yes. Why? Why? Well, because in every Title VII case that this Court has evaluated so far, you've done the same thing. You evaluate the facts of the case based against the punitive damages awarded to determine if they're reasonable, if they're proportional. So should we overrule those cases? No, you should not overrule those cases. Why not? So this brings us back to the same question. Why shouldn't we just say, look, whatever the Supreme Court said in BMW in those cases applies to an open-ended determination by a jury where there's no limit, no limit whatsoever. And it's unfair to hail people into court when there's no limit and have them risk the business and, you know, whatever the stake that they have. But here we have a different regime. We have a business. We have a congressional determination as to the correct upper limit for damages. What's left for us to do under the BMW regime? Your responsibility is to apply the noble review to a punitive damage award and determine whether it is proportionate, fair, and reasonable given the facts of each case. That's been the responsibility of the Court forever. Let me ask you the question somewhat conversely. Let's say there were a majority of this Court that felt, look, when there's statutory determination, there's nothing for us to do. The case doesn't apply. Is there anything in the Supreme Court case law that stands in the way that would preclude us from doing that? Yes, I believe so. Tell us. If you look at Exxon v. Baker, the Supreme Court's case, it most recently considered punitive damage awards issued out of this circuit. I remember Exxon well. The Court went very carefully through. This is Exxon Shipping v. Baker? Correct. 554 U.S. 471? Correct. And which page are we now talking about? I'm sorry, Your Honor, I can't cite you directly to a page just now, but let me explain. The Court went very carefully in all of this. I don't remember the page. Justice Souter went very carefully through. Do you have the case there? I do not. I can pull it up here, Your Honor. But I'm not referring to a specific quotation. What I'm saying is Justice Souter went very specifically through the history of punitive damages, the jurisprudence of punitive damages. Would you like my case, my copy of the case? It's helpful to find language and, you know, what is it you're relying on in the case? You're now telling us there's a case that stands in the way of doing what I've suggested, what I've asked your work. And you can't tell me where on the case or something, in a way. Because it's multiple pages, Your Honor. I can find it. It's multiple pages. Okay. I'm sorry. I'm capable of looking at more than one page, you know. I know you are. All I'm saying is Justice Souter went very carefully through the history of punitive damages and the jurisprudence of punitive damages and examined the case. Did he address a situation where the legislature had set a cap? That case does not involve a legislative cap, no. Okay. So how does it stand in the way of our doing what I have asked a question about? When I say suggested, I don't mean that's what we're going to do or anybody thinks of doing. I'm just saying assume that that's a possibility. What is there in a case like Exxon, which you now cited, where there is no cap that prevents us from doing what I've said in a case where there is a statutory cap? The Supreme Court made it clear that since the Hammurabi Code, courts have been evaluating punitive damages awards for reasonableness under either the federal common law, as was the case in Exxon. I haven't had any Hammurabi Code cases. Understood. In your view, what purposes are served by the Title VII statutory scheme? Thank you. I think the Title VII statutory scheme sets the limit here. It establishes the range in which this court needs to evaluate this case. You need to look at it understanding that $300,000 is the maximum amount under the statutory scheme that can be imposed. What does Gore provide that's not provided by the statutory scheme? What Gore provides is some guideposts by which the court can analyze the case, can look at the case given the elements that the court has said are relevant to a punitive damage award to determine whether or not this case is among the most reprehensible or not. Given that Gore did not even address a case with a state law and state punitive damages, why is it even appropriate for us to use Gore? I mean, Gore talked about a state law. Correct. State punitive damages. This does not. This talks about instead a Title VII case, which is outlined under the statute. So why have I got to even look at the factors from Gore? Because the court has in the past. The jurisprudence in this circuit has been to evaluate. But we're sitting in a non-bank court, so let's start from scratch, okay? And answer your questions, answer as if we didn't have the other cases. Well, okay. That's important, though, because part of due process is notice, and an employer in this circuit understands what its potential exposure is based upon the conduct. But your pressure in this case can't be the $300,000. I'm sure you could afford the $300,000. Obviously, you have a bigger issue that you're worried about. Why isn't every employer on notice that $300,000 is the cap? Every employer is on notice that $300,000 is the cap. What's the notice problem? The notice problem is that it's an individualized assessment. That's the important role the court plays. The court looks at this and says, based on the facts of this case, based on the circumstances here at issue, what is the appropriate amount of punitive damages to be handed down in this case? But the jury's done that, and the jury was instructed that it needs to consider reprehensibility, and the jury knew that it had to make a certain special finding to even be talking about awarding punitive damages. Why should we substitute our judgment? Because, again, that's the role of the courts. The courts have always and consistently reviewed punitive damage awards. But what has happened here is Congress has substituted its judgment. Although the jury said $890,000, Congress said it's $300,000. Somebody has already cut the jury award by two-thirds. Why do we need to cut it some more? There's an important difference between a cap and the court's role in evaluating punitive damages. A cap says this is the maximum amount possible. What the court's role is is to examine the case under the Gore Guideposts or, for that matter, under the federal common law with regard to the excessiveness of punitive damages awards and determine whether or not this case measures up. Where does it fit? But you're saying more than that. You're saying it must meet a determination and use $300,000 as the upper limit, right? That is correct. Why not assume we can do that, say, you know, sky's the limit. We then do an evaluation, and if that evaluation comes up to more than $300,000, we cut it to $300,000. Why would we have to treat $300,000 as the limit for the most egregious case? I guess the question is when do you apply the $300,000 limit? You could apply it to the back end. You could say sky's the limit. In this case, the jury awards almost a million dollars. Correct. And we look at it. We say, you know, does this offend or whatever. And let's say we come up and say, well, no, that's a lot. $500,000 is more appropriate. And then we say, oh, wait a minute, there's a statutory cap of $300,000. So, man, now we limit it. What is it that requires the compression that you would have us do, which says when you look at the spectrum of egregiousness, you have to set $300,000 at the very upper limit? Well, I guess it really doesn't matter where you apply. Well, it does matter quite a bit. Because if you say the worst you can do is $300,000, then everything else has to be less. So maybe this is not the worst case. But if you say the worst can be much higher, and then you set the limit after you do the proportionality analysis, lots of cases would fall under the $300,000 cap. We're urging the court to consider this case in light of its other punitive damages cases and determine whether in comparison with those cases, this case would go beyond that cap or not. We believe it does not. And we've cited cases where the court has reached a conclusion that a smaller award is sufficient based upon the facts of those cases. What about the injunctive relief? Is that just totally irrelevant? Well, the interesting thing about the injunctive relief is that it ordered ISARCA to do what it had. What about sexually, though, in general? Suppose there was a lot of injunctive relief and a dollar in nominal damages. Would the injunctive relief be relevant or irrelevant? I think the injunctive relief could be relevant in an appropriate case. So, for example, in a case where there are a couple of cases where the plaintiff has suffered virtually no harm because they've been employed for a short time or something like that. So, for example, if an employer was ordered to rehire an employee as an injunctive relief, that may be a relevant inquiry. And it's something that, you know, wasn't an issue in this case but could be an issue that's relevant. The district court thought it was. Well, the district court ordered ISARCA to adopt a policy, yes, that it had. So which way does it cut? How does it cut in this particular case? In any case, how does it cut the injunctive relief? I guess if the injunctive relief is a meaningful part of the remedy, then it certainly could cut in favor of a punitive award. The arguments are opposite. You could just say you've gotten much of what the punitive award does is to deter future conduct. Correct. And so an injunction should really argue for less punitive damages. In certain cases, I could understand where that would be true, yes. And that's the importance of reviewing each case on its facts. That's the importance of the role this court plays. What's your best case? You say this is sort of compared to our cases, this is out of line. So what's your best case? Well, I think you've got several cases. Give me one. The Pavon is a good example. I'm sorry? The Pavon case. In that case, you've got a Hispanic employee, individual from Columbia. He was brought in Section 1981 in Title VII claim. He had significant racist names directed toward him. When he complained about it, he was given a disciplinary warning. And after that, he complained again, and he was fired. So you've got a case where an employee actually engages in, is discriminated against, and complains about it, and is retaliated against. And in those kinds of cases, this court upheld a two-to-one ratio. What was the final number? Pavon v. Swift, 9th Circuit, 1999. I got the case. Remind me what the figures were there. What were the punitive awards? I'd have to pull it up, Your Honor. Well, you're looking for that. See if it's also compensatory, since there's nominal damage. There were compensatory damages in that case. What are you arguing today are reasonable damages, or punitive damages award? We're arguing that if you compare this case to Mendez, which is another good example of a punitive damages case out of this circuit, then you'll find that the facts in this case are less egregious than those, and as a result, this case should fall somewhere below that. That was the most applicable case. It's a nominal damages case. In that case, the court determined that a $2,500 award was appropriate. $2,500 to one is the ratio, and the same argument should apply here. In looking at Mendez, Judge Goldman, I have a question for you. When you talk about multiples, you say in that case it was $2,500 to one. You're making a multiple of punitives versus compensatory damages. Correct. But if it's nominal damages, why should we at all consider multiple theory of the Supreme Court's precedent? For example, couldn't a nominal damages in some jurisdictions be one penny rather than one dollar? It could be. Does that mean that a $100 punitive damages award would be like a $10,000 to one ratio? It does, and the Supreme Court has made it clear that it's not a bright-line test, that the ratio is simply a tool to use to compare cases to cases, compare apples to apples, if you will. And that's because punitive damages awards are based upon the gravity of the offense, and so you can't compare the punitive damages in this case, for example, to the punitive damages in Exxon because the damages are so significantly different. Right, but if you start off with a cap, a $1 cap on nominal damages, how can you compare that to a compensatory damage case in terms of the ratio theory? Well, I like what this Court said in EEOC v. Farmers, when it said basically that the fact that the plaintiff has suffered a small amount of injury should indicate that, in fact, there's less culpable conduct going on. But that case talks about compensatory damages, where they found a small amount of damages. Do you find in Gore or anywhere else, any case where they say you apply a ratio theory to a nominal damages case? I do not know of a case where they've applied a ratio theory to a nominal damages case, and that's because it's a very difficult analysis to make, and the Court looks at the fact that there is— It's impossible. Correct. Because what the compensatory damages cases say, and what Gore says, is you measure the actual damages and see a ratio to the actual damages. Correct. Which you find in a compensatory damages case. You don't find the actual damages in a nominal damages case. That is correct. In a nominal damages case, there are no actual damages. But the argument that the State advances, that you should throw out any kind of ratio or comparison in a nominal damages case, makes no sense for several reasons. The first of which is that it rewards the plaintiff who has suffered the least amount of harm, and it punishes the defendant who has caused the least amount of harm. There's a great line out of Judge Posner's decision in the Lust case, which the State relies upon, where he says, if you tell robbers that the penalty for robbery is death, then there's absolutely no deterrence for the robber to not kill people on his way out the door to eliminate the witnesses. Well, if you tell employers, Judge Posner— It sounds just like Dick. It's a good argument against capital punishment in a number of cases where we now impose it. So that's the point. It's Posner on that side. So the point is then— The point is then we need to, if you will, make the decision that punitive damages should be proportional to the harm. There's hundreds of cases out there that say that. But you're saying there's no harm, except there are no compensatory damages. So you're saying there shouldn't be any punitive damages. And no deterrence. Did you pull up Pavan? I have not yet, Your Honor. I'm sorry. I know it's easier to have it on paper because, you know, you don't have to wait pulling it up and finding it. I did look at Pavan, which I have on paper. You know, it's easy to find. And Pavan was not a case where we cut back the punitive damages. That was a case where the jury awarded 250, and we said it's okay. Correct. Why are you citing it? Why are you citing it? This is not a case where we applied for proportionality analysis and said it's appropriate. We might have said appropriate was $300,000. We might have said—I mean, of course, the limit was $300,000. So Pavan doesn't help you at all. Where is the case? What is your best case where we said we're cutting things back, and this is the limit? Your Honor, may I reserve that until I come back? I would like to reserve a few minutes in response, and I will address that concern when I come back. I will hold you to it. I will do that. Counsel, in your view, can punitive damages be awarded in the complete absence of compensatory damages under Title VII? I think the case on that has developed to the point where, yes. I think we have to recognize that even when there are no damages, an employer can be subject to punitive damages. So given that under Title VII, the statutory scheme is set out such that zero compensatory damages can lead to a punitive damages award, how does the racial analysis even make sense? Because, again, the Supreme Court has said the racial is not a bright-line test. It's a guidepost. And so it should inform the court about what is an appropriate amount of punitive damages in any case. And in a zero damages case or an anomalous damages case— But then if somebody has zero compensatory damages and then is awarded, let's say, $250,000 punitive damages, that would be okay because the racial analysis really wouldn't make sense under that scenario. But yet a second plaintiff can suffer $3 in compensatory damages and then be subject to the racial analysis. Under your view, is that right? No. Under our view, I think what the court really said about the ratio is that it's a relationship test. It helps courts evaluate what the relationship is between punitive damages and actual damages. And all the court has said, really, is that there needs to be a reasonable relationship between those two things. And so what we would say is that when the actual damages are zero or nominal, then the punitive damages should also be relatively small, should be relatively small. And the statutory scheme is an inverse relationship. So to the extent there are large compensatory damages, there isn't going to be room to award punitive damages anyway. Under the cap— Potentially none, right? Potentially under the cap, that is correct. And that's the statutory scheme, which I don't believe is at issue. It doesn't allow for the proportionality that you're suggesting, counsel. That's what I'm asking you to respond to. I see. I see. That is correct. But, of course, in that case, if there are large compensatory damages, then the punitive damages are going to be proportionally small, necessarily. So it's all backwards. Exactly. Counsel, is there anything in the Supreme Court's precedent that would suggest that we could not just ask whether the amount of punitive damages is fairly proportionate to bad conduct or culpable conduct that was found by the jury? Not at all. I think that is what the Supreme Court is saying, is that you just need to evaluate the culpable conduct and determine whether or not this award is proportionate to that conduct. Shouldn't we be looking at proportionality to the conduct or bad conduct rather than proportionality to compensatory damages, of which there are none here? Yes. I think that is what we're asking you to do. We're asking you to evaluate the facts of this case in light of the other cases that could be out there. What are you going to do with the cases of quid pro quo harassment or actual sexual assault? You're then assuming your answer where you started, which is that we're looking at the $300,000 as the worst possible behavior rather than we're looking at whether $300,000, just as an amount of money, which isn't very much money these days, represents something about the reprehensibility. If you didn't look at the $300,000 as a cap for that purpose, the answer would have to be yes, a $300,000 punitive damage award is peanuts. Well, it is true that in a total of seven cases you're going to have to look at the $300,000 as a cap. And that's true in all the cases. But you wanted to look at it as the worst behavior, right? That's what we're suggesting because everyone... That's a different answer than when you're being judged gullible. Well, I think the answer is you're looking at the reprehensible behavior in order to determine what the punitive damages should be with $300,000 as the outlier cap. Well, or you could look at it as $300,000 just as $300,000. In Title VII, it is $300,000, but it's the cap on what the amount can be. And so in order to compare the cases fairly, you're going to have to recognize that. The most you can ever award in a Title VII case is $300,000. So where does this case fit within that scale? If I believe that the degree of reprehensibility is bad here, and I find that the third factor has also been complied with since there is a cap, and I can't really determine what to do regarding compensatory damages and nominal damages, so I don't think the second factor is really something I can weigh very well, can't I still say that the district court made the right decision? Because I'm weighing the factors, each one against their own. The first factor I've weighed, I've looked at what the district court said. I've given the district court some deference, if you will, on the facts. I've looked at what the district court said as it relates to the third factor. I'm giving it deference. On the second factor, I don't know for sure. So now I'm trying to weigh all the factors together, and I say, hey, based on the first and third factor, it seems to me I have to affirm the district court. Well, is there anything wrong with that analysis, given what Exxon Valdez said, that I can't be rigid or exclusive in my application of the factors? Yes, because the second factor is an important factor. It requires that there be a... But there's nothing that says the second factor is more important than the others. In fact, it says quite the opposite. The first factor is the most important. Correct. Reprehensibility is the most important, and I would agree with that. If I may, I'm going to reserve the balance of my time for just a second. Well, if you'd just answer the question. Okay. Yes, the first factor is the most important. Reprehensibility is the most important. But there's no authority out there for just jettisoning the second factor. But it has to be applied in the way it was intended, which is to look at it as a reasonable relationship between the amount of damages and the amount of punitive damages. And so everybody's stuck on the... Judge Kavinsky is waiting very eagerly to hear your answer when you come back. Thank you. Did I answer your question? Thank you. Thank you. Okay, we'll hear from the other side. Thank you. May it please the Court. I'm Eric Schnapper. I represent the plaintiffs in this case. The Court can and we think should resolve this case in light of the Title VII regime, which the Court has been discussing. We don't argue that it should do so just because there's a statute. There are aspects of this particular statute that are congruent with the constitutional concerns set out in the BMW line of cases. And that makes looking to the statute the right way to resolve this. The first guidepost in the BMW cases is the reprehensibility of the conduct. The statute here expressly limits in a couple of ways the kinds of circumstances in which punitive damages can be awarded. It's not merely limited to in cases of intentional discrimination, but the statute expressly requires a showing of either malice or reckless indifference. And the Supreme Court in Kolstad has made clear that has some real teeth. And that certainly is closely related to the first guidepost. Secondly, the third guidepost fits perfectly here. The third guidepost is to look to the limitations placed by statutes on punitive damages. This is a statutory limitation on punitive damages. As my brother pointed out... But you still need proportionality, right? It's one thing to say you have a cap, but the idea of proportionality doesn't go away, right? Well, let's say there were no cap. Let's say we have the same regime. If there were no caps, we would... Let me finish my sentence. Well, I... Let me finish. I'm sorry. You don't know what I really want? Let's say there was no cap. Everything else is the same. There's no cap. We would then still have to apply the Gore analysis as to proportionality, wouldn't we? If the actual damages were $1 or $10 or whatever, we'd have to look at the ratio of double digits, single digits, double digits. Wouldn't we do that? We think that would not be appropriate, Your Honor. Why is that? Well, in the peculiar situation where there are no... Are we being acquired by the Supreme Court? We don't believe you are. I've taken away the cap. Yes, I understand that. I understand. I'm putting the cap to one side. I'm moving over to what we do in the absence of caps. It's our view that... It's what? It's our view that where there are no damages awarded or only nominal damages awarded, that the second factor is not part of the analysis, as I think you were suggesting, for a couple of reasons. First of all, if you were to require proportionality as is normally understood, applying it to a no-damage or nominal-damage case would simply wipe out the other factors, and that was essentially the view advanced by the defendant in the lower court, where they said proportionality is a ratio of no more than 9 to 1. Punitive damages have to be $9. If you were to do that sort of analysis, there would be no ability to consider reprehensibility. Or deterrence. That was me. Or deterrence. Or deterrence. Or deterrence. That's right. But that would be true of all low actual damages award cases. Any case where there was reprehensible conduct but very little or no damage would be exactly in that category. The Supreme Court has never said that when you have very low damages cases, you throw out the lower analysis. No, but our reading of the decision is that there are three guideposts and you look at all three factors. Are you still arguing that now? I'm trying to figure out if, from reading everything, are you arguing what the EEOC was proposing, that Title VII basically supplants GORE, or are you saying we apply GORE? You could decide this on either basis. I think we would suggest you decide it on the basis specifically advanced by the EEOC, because, in a sense, we think it's a narrower constitutional rule. It doesn't implicate all the other cases where this could come up. So you're saying Title VII supplants GORE? Well, I wouldn't. The point where supplant might be a little provocative. We think it sufficiently addresses the GORE concerns that the court could use that regime. Well, why does GORE apply at all in the statutory scheme context when you have statutory caps? I mean, let's say you have a cap on compensatory damages. The ratio theory really doesn't work in that, because you're not measuring harm, you're measuring a cap. So I just don't understand why GORE applies when you have a statutory violation on a statute that has statutory caps. I understand completely if there are no caps, that's a whole different measure. But why should GORE apply at all? How can you meaningfully apply the factors? I think there would be circumstances in which that problem could arise. I don't think it's presented here. If you had a situation where there was, say, a cap on compensatory damages of $100,000, and so the jury was told that and only awarded $100,000, we don't really know what the jury thought the harm was in that situation. That's a bit different from what we have here. That doesn't happen, of course. I mean, that's not usually the way the jury caps work. The jury, for whatever reason, this statute is set up in most of the Mars, the Mars and the others, but usually the jury does whatever it does and the cap comes in afterwards. All right. Let me recast the question a bit. If the question was to say what would you do if the jury awarded a million dollars and the court then capped it at $100,000, which number would you use for ratio purposes? I think the sensible answer, McGraw, is you'd use the number the jury picked. The cap may limit what the defendant is going to get, but it's not the measure of the harm. The Supreme Court cases on punitive damages and due process are all economic damages, I think. Is that right? Not all economic damages would be outside that. No, I'm not asking you that. I'm asking you whether the Supreme Court cases, be them Douglas Gore and State Farm and Exxon and whatever, they're all about economic damages. That's correct. Doesn't your real concern have to do with cases in which the damages are non-economic, i.e. they're dignitary or constitutional interest, First Amendment, and things that are sometimes translated into emotional distress damages, but that's not exactly the matter. The concern in the Supreme Court cases, it seems to me, is largely about disproportionate punities when the damages are economic. I think that's correct, Your Honor. In that series of cases, the court- Is there any case which is not in that category? I don't believe so. In BMW and Smart Car and Cooper, the Supreme Court repeatedly said that the proportionality analysis doesn't necessarily apply or apply in the same way when the harm is non-economic and difficult to determine. So the court has made the distinction that recognize the problem that you have flagged and suggested that category of cases would raise this interest. It would be another reason for not doing it here. It would be another reason for not doing it here. The other concern by the Supreme Court is notice. In other words, if you have an open-ended punitive scheme, there's no notice to the defendant on the upper limits of liability, and that's not present in a case that involves statutory caps. That's exactly right. That's one of the other reasons why we think it makes sense to use the Title VII regime because in addition to addressing the First and Third Guideposts, it provides exceptionally clear notice. I mean, the defendant really knows what they're dealing with here more than they would if they went out with a copy of BMW and State Farm and tried to figure out what was going to happen to them. They really know. To get back to Judge Merguia's question, in this particular context, why doesn't Title VII supplant GORE? I'm not saying that all statutes might not be subject to it. Some statutes might be subject to a GORE regime. But why, given everything we have under Title VII, why does it not really supplant GORE? Well, I think you should use it. I think it sufficiently addresses the constitutional concerns in GORE that you don't need to also go on to GORE. You can just operate within the limits of the statute. I was only objecting to the word supplant. I thought it was a little inflent. If I said yes to that, I might get in some trouble. I've heard of trick questions. This sounds like a trick answer. Does it supplant GORE? Do we use it instead of? Yes, you should use it instead of. I should use it instead of. I'm not trying to be clever. No, you're trying to be clear. Thank you. If you're hesitating, suppose there was a statute that set a cap as $50 million. In a particular case, somebody might argue the GORE factors would need to be considered. But a cap of this nature, I take it you're telling us the GORE factors have been satisfied. I think so. That's why I answered it in the way I did. It's not our view that whenever there's a statute that's got a cap, that's the end of the matter. This statute addresses several of the GORE factors. It provides notice. And it's also nuanced in the sense that the cap varies by the size of the defendant, which will have something to do with what you need to deter the conduct. Counsel, has the Supreme Court ever applied its ratio or proportionality analysis to nominal damages? No, Your Honor. It hasn't come up. If I might address one other question that came up particularly with regard to Title VII. It's our understanding that the cap doesn't – there is not a compression rule here. The cap, the $300,000 is not the amount Congress fixed for the worst harassment or discrimination with all other numbers to go below. It's not, say, what you would have if you had a – The more damages you have, the lower the punitive damages. That's also the quirky way it works. But I believe some lower courts have addressed this issue. I can't point them to you now. But this isn't like a sentencing statute which says you get 15 to 25 years for bank robbery. And so the worst bank robbery is before the sentencing guidelines. The worst bank robbery would be 25, and you work down from that. This doesn't work that way. The jury is supposed to – fixes what it thinks are the appropriate compensatory damages. The court then just cuts it off. And that's been leading – there are some lower courts. I mean, it could operate both – either way. Yes, we don't believe Congress – Why – I know you prefer the non-compression regime, and it makes a certain amount of sense. But it also makes a certain amount of sense to say, well, Congress looked at this kind of harm. This is not somebody who has been injured in the workplace or something like that. And they decide $300,000 is the cap. And, therefore, that reflects a determination that they think the worst instance of this kind of conduct deserves no more than $300,000. That's another way of looking at it. And why is that not the right way of looking at it? Well, I think there's an answer on the face of the statute, which is the cap varies with the size of the employer. The same conduct is subject to a different cap. If this was an employer with 99 workers, the cap would have been $50,000. It makes perfect sense. It makes perfect sense. It says if you have a larger workforce, we're going to hit you harder because it's going to make – modify your behavior. You're also going to very likely be a larger entity, a larger enterprise, and, therefore, you sort of need more serious sanctions to deter future misconduct. That doesn't – that makes sense, but the question that you asked was, did Congress contemplate that the cap was to reflect what it – the amount for the most egregious conduct? And the egregiousness of the conduct doesn't depend on the size of the employer. If it was a small employer, the workers, the supervisors, and others did exactly what happened here, the conduct would be just as reprehensible. But the difficulty I'm having is that the size of the punitive damages award also isn't necessarily going to even reflect the egregiousness of the conduct for the reason that Judge Berzon and I have been trying to point out, right? It's almost – it's going to be an inverse proportion to the amount of compensatory damages that are shown. Yes, this – I mean, in the more – But this analysis gets pretty out of whack, doesn't it? It's a very different regime than the Gore regime. If, for example, you had somebody who was harassed every day for five years and had three nervous breakdowns, presumably they would cap out the compensatories and they wouldn't get any punitive damages. That's right. It's – And that would be true no matter how egregious the conduct is, right? There would be no room for any punitive damages award, unless I'm missing something, and I really invite you to tell me if I am. No, you're right, and I should have given that answer to Chief Judge Kaczynski. The – it does work in that particular way. I think – If I change the – if I change the idea, it seems to me the district court used the Gore factors. It did. And the district court was trying to use the Gore factors and make some determinations based on the Gore factors. And I'm to give some deference to the district court, at least as to its factual determinations. When the district court found that, and I quote, a particularly egregious act happened here that resulted in only a small amount of economic damages, was that a factual determination? You probably have to characterize – well, it's two things. I think it seems more – As the rate goes, what they were trying to do is fit it into State Farm. So was he making a legal determination, which I can then de novo review? I think this is more in the nature of a mixed question of fact and law. I think it would be appropriate to look to the district court's understanding of the record, but I don't think Rule 52 would apply here. How about his determination on reprehensibility? I would say the same thing. I would say the same thing. I think it can have an appropriate – I mean, bearing in mind the decision in Cooper, with which this court's familiar. I'm bearing in mind the decision in Mendez, where it seems to me our court suggested that maybe even the determination by the district court was a question of fact as to those particular solutions. I think that would be going too far. I think it would be appropriate to give some weight in light of the court's familiarity with the record. The trial judge would have seen the witnesses, and many of the individuals involved in this case testified on defense officials. So I think it would have some role, but it's not like Rule 52. Would the court appropriately step in, not with regard to proportionality at all, but what if the court was of the view that the jury's award was a reflection of bias against the defendant? Should the court step in then? That is normally a manner for a new trial motion, and there's a fair amount of discretion on the part – you defer considerably to the trial judge's view about whether there was bias or prejudice. So I was speaking of the trial court, if my question was vague. Oh, if the trial court thought the verdict was the result of bias, it could order a new trial, yes. And that's a different check and safeguard. And you think that's the only check the trial court would have, is that the disposal is an all-or-nothing, a new trial order? Assuming that the Title VII regime applies. The trial judge has a number of tools to deal with jury verdicts. I'm not sure quite what the question is you're asking. I think that we decided that you used the word supplant, or we did for you. And I wanted to just talk about the Title VII regime. And so I understand that you think that the cap controls, but I'm just trying to get at it. If it's not a proportionality issue, if there's a question about whether the punitive damages award was a function of bias, would you think that the trial – A trial judge, even under the Title VII regime, has the authority to order a new trial based on a bias or passion. The trial judge can – has all the traditional tools for dealing with that. I think in some cases that might be appropriate. So we're not – and we're not leaving the defendant defenseless if – I couldn't just – given the limitations of Title VII, it wouldn't be a runaway jury. It might be strolling down the road a little bit. But if the judge thought that the jury had acted in a bias, absolutely the judge could deal with that. So if I just turn for a second to what should happen under Gore. If the court would have decided in that fashion. As I've said, applying the ratios to $1 nominal damages is going to cause a number of problems. Indeed, my brother acknowledged that you couldn't exactly do that where there were no damages, or no nominal damages, because you couldn't award any punitive damage. The ratio would be infinity, and that's obviously wrong. The panel tried to deal with this by coming up with some other number, not the traditional single-digit number, and they came up with a number of 125,000 to 1. We don't think that's an appropriate solution to this problem. The numbers are obviously nothing like what the courts normally do. The number that the panel picked was based somewhat on happenstance, on the verdict that a jury happened to award in an old Fifth Circuit case, if the jury had awarded more money. So it's no more arbitrary in a way than saying normally single digits. You know, that's a number they pulled out of a hat. It may have been a hat in Washington. It was a hat in Washington. I don't know. Hats in Washington count for more, but, you know. Hats in Washington count for more. And then they pulled that number out of the hat. I mean, if you were to start looking for numbers in, you know, four or five digits, I don't know how you'd get them. That's essentially the problem, that if you're going to engage in this Gore analysis, and we do know that we have to do it in certain cases, right, you have to come up with a number in the hat, essentially. There's nothing, there's no natural law that dictates a number, right? So what's wrong with 125,000? Why is that any worse than single digits? 9 to 1, 3 to 1, 4 to 1, 9 to 1. Yeah, I understand your question. I think the location of the court is of some importance here. I mean, the Supreme Court has picked that number out of its hat, and we all live with it. If you have to then fashion a number somewhere between 10 and a million out of some reading of what's done in other cases, I just don't think it's a workable answer. Very simple explanation to this. What the panel appeared to be doing was looking for a comparable figure to say, well, here is what they generally give in damages in this type of case. Had the panel said, instead of, well, we're looking for a ratio, and picked out a ratio that would knock the Supreme Court out of its chairs once they said you should do 1 to 9, to say, well, we're going to do 1 to 125,000, that would probably surprise the Supreme Court greatly. But if the panel had said, instead of we're applying a ratio, if they had said we're going to look for what courts do in comparable cases, and apply that figure and say, well, here is a reasonable award, it would have been a totally different issue. Yes, that would have. But the panel didn't do it. They didn't do that. They attempted to comply with Gore, which it might not have had to do, by saying, well, here's a ratio of 125,000. Now, if they had found another case that awarded 500,000, they would have said, well, here's a ratio of 500,000 to 1. Right. So the problem is trying to squeeze this into Factor 2 of Gore, where it clearly doesn't apply, because Gore had to do with compensatory damages, and never said that that was the test to use with nominal damages. We agree on it. I'd like to defer the rest of my time to the government here. Okay. Thank you. May I please, the Court? I wanted to point out that the punitive damages provision is part of the Civil Rights Act of 1991, and the year before there was the Civil Rights Act of 1990. That had $150,000 of capped damages but uncapped compensatory damages. That was vetoed by President Bush. So the current statute is a compromise that Congress worked out, and I agree with the judges that have mentioned that it seems a little twisted in a way that the more that you're harmed, the less that you will get punitive damages. But there are some damages that are outside the cap, like pecuniary damages, past pecuniary damages. If you have three nervous breakdowns and you have medical evidence of that, those are actually outside the cap. There's also things like back pain, reinstatement, injunctive relief that are outside the cap. So actually, the minor amount of cases, the damages would be relatively small. I'm sorry, the compensatory damages would be relatively small, so the sort of eating into the $300,000 cap would not go very far, right? Well, it depends on the case, Your Honor. I know we can sort of conjure up cases where it could happen, but... I think that was why the two kinds of damages are capped together, because a lot of discrimination results in emotional distress and humiliation and indignity that's hard to quantify. So Congress decided to cap the two damages together to try to, I guess, allay fears. So perhaps the normal case would be something like two or three weeks of lost work, a few medicals, something like that, maybe amounting to at most $20,000, $30,000, and then the jury could award the rest of the cap or whatever impunities, right? That's possible. It would be very rare to get $200,000 in compensatories, right? Well, it's very difficult to put a number on the humiliation and pain of being discriminated against when you can't point to something specific. What about future pay? That comes out of the $300,000 cap. Correct, that's not part of the cap as well, Your Honor. It's not part of the cap? Future front pay, you mean? Well, future medical expenses, because they're hard to quantify. Again, everything that's hard to quantify is part of the cap. And again, it all goes to notice so that a defendant knows exactly what they will be on the hook for if they meet the threshold standard, which is not necessarily an easy standard to meet. And the standard itself, that you have to engage in intentional discrimination with malice or reckless indifference for federally protected rights, requires notice in and of itself. That's the usual standard for punitive damages. It's taken from the civil rights statute, like 1981 and 1983. That's okay. It's taken from the common law, no? Correct, Your Honor. But it requires that, I think in Kolstad, the court said that you are acting with a perception that you might be violating the law. So built into the statute itself is this concept of notice. And all I'm saying is that the Supreme Court line of the BMW line of cases assumed that standard. Correct. And you are also correct that the Gore cases are all economic cases that deal with insurance fraud. How do you approach the analytic question of how Gore applies to a specific statute? I mean, it seems to me that first you say, does the statutory scheme survive the underlying constitutional concerns of Gore? If the answer to that is yes, it seems to me that's the end of the inquiry. I agree. But if you say no, if you say there are no caps, we still have to apply the constitutional concerns, and we go to the second step. Is that how you would apply it? Well, I can only speak to Title VII with any real authority. But that statute itself already – it's not even a supplant score. It's already – it's almost like it's duplicative to apply those factors. No, what I mean is we look at the scheme first to see whether it satisfies the underlying constitutional concerns of Gore rather than applying Gore to the scheme. Well, in Exxon Shipping, the court discussed earlier, that involved a federal common law, not a statute, but maritime law. And there the court didn't go to the Gore factors at all. Here you have a statute that – and if you'll – I'm sure you all know that Gore was most concerned with notice. Does the person know – the defendant know what is prohibited, and do they know what the penalty is going to be if they engage in that behavior? So all of those Gore factors are just ways to tease out whether the defendant had notice. So it really doesn't make much sense to apply them in the Title VII context. What about substantive reasonableness or deterring feature of bad conduct? I guess I have the same question as Judge Thomas. Is there – does Gore not offer us anything beyond the Title VII? I mean, because it seems like Title VII addresses a malice. Well, the caps are on or are correlated to the size of the employer, so they're not correlated to the injury to the victim. So that is the closest approximation of deterrent power, with the idea that the largest companies will probably – it'll take the most punitive damages to actually punish and defer. It's also arguably a due process concern, right? The larger the employer, the more likely to be able to bear the damages. That's also weighing – so a very small employer doesn't get crushed by those damages. And the smallest employers, the maximum they would be liable for compensatory punitive damages is $50,000. And, of course, the smallest employers are – don't even apply if they have under 15 employees. So the caps are correlated to the size of the employer as the best approximation. What do you say about the compression argument that plaintiff's counsel has said? You know, when we look at it, we look at the cap, and we have to determine what is the most egregious conduct and set it in the cap, and then everything else scales down from that. Well, I've never seen a case that talked about any kind of flagging scale under Title VII. If you meet the requirement, if you meet that malice and reckless indifference standard, and then you're liable for the up to the cap. Would you like to see such a case? No, thank you. A court – but in the Lessee-Seeley case that was also discussed, Judge Posner lowered a cap – lowered an award within the caps because of an evidentiary rule. It wasn't a due process issue, but that was about a promotion that a woman was denied, and then she received a promotion two months later. So because there wasn't a – I understand that. I understand that. But that doesn't answer the question. I mean, the plaintiff's counsel made an argument that we need to apply some sort of proportionality analysis, nevertheless, and that in doing that, we set a cap that can only be awarded for the most egregious conduct. And when it's less than that, we have to scale it down. It's an argument. I don't know if it has – Well, that's just not the law. But I thought I'd give you a chance to respond to it. That's not the law, Your Honor. Colstead said that you don't have to find egregious conduct. You have to meet the standard for punitive damages. One of the factors in Gore's first fax was reprehensibility. Correct. And I find your argument that a lot of the concerns expressed in Gore have already been addressed by the statute in that malice or deliberate indifference has to be shown. Right. But is there no role for the court in looking at the comparative conduct of employers and determining, well, in this case, here's what happened one month with Wayne Johnson, and looking at the facts to sort of test against other cases the egregiousness or level of egregiousness of various employer conduct. For example, was it a quick propole type of sexual harassment situation? So we'll place that a little bit higher on the scale. So maybe that should be closer to the $300,000 cap. But something less than that might warrant a reduction or remitter of damages. That may be appropriate. How does that come in in terms of the analysis and the governance? Well, the commission issued guidance following the enactment of the 1991 Civil Rights Act. And in our guidance, we go through, I think it's seven factors, that looks at the egregiousness of the behavior, the duration of the discrimination, whether the conduct had been repeated in other instances, and it was sort of a repeat. What is that? That's a substitution in the commission's guidance? No, it's supposed to help decide whether the defendant had acted with malice or reckless disregard for the federally protected rights. There are factors. No one suggested here overturning that finding as a finding. We have a finding of that, of the statutory factors. No one is suggesting overturning that finding. Of the gore factors? Of the statutory malice. Correct. I understand that. We're talking about how you get it, what is the proper amount. Is that not what we're? You were saying, as I understood your answer to my question, it wasn't really about the proper amount. It's about whether to make the finding under the statute. Well, I want to just make clear that if you're talking about due process concerns, anything within the cap would be constitutional, but there may be other reasons to lower the amount under the cap if there's an evidentiary issue where it doesn't justify the damages that the jury had awarded. But, you know, the jury is not informed that there is a cap. So in typical cases, they will award something over the cap, and then it will be lowered to that cap. But a judge certainly has discretion to lower it within the cap, looking at some of the factors that we have in our guidance that are very similar to the gores and state farms sort of idea about reprehensibility. How bad was the discrimination? How long did it go on? What did the defendant do once it found out about it? All these kinds of things. And they're very in a typical. Do we review that de novo or with some difference? Well, factual findings are usually reviewed for abuse of discretion, but the finding on whether a damages award is constitutional is reviewed de novo, as the Supreme Court has found. But the issue, again, it's not that you can never reduce an award of punitive damages, but the question is, is it a constitutional problem? And our position – factual error versus de novo under the Constitution. Oh, did I not answer that? In other words, does it translate into that distinction? Otherwise, it doesn't matter. Well, the case – I think it was – I'm trying to remember which case. I think it was Leatherman that sent the case back to review under the proper standard, and it may not affect it in some cases, but the more exacting standard could have an effect. But the factual findings of the court are relevant. I mean, it's sort of a mixed question, I guess, of both. We are out of time. Thank you. Thank you. Thank you, Judge Kaczynski. To answer your questions, First, we cited Pabon for the proposition as being our best case because I was trying to find a case in the Ninth Circuit that, in our view, was a good guidepost, a good example of the kinds of facts that justify a significant punitive damages award. But it's useless to you because we made no determination. That was not an issue as to whether it was or was not. So it's not like we looked at the award and we said we compress it down to two things. That's what the jury did, and then we dealt with a variety of other arguments as to whether or not the total damages can exceed $300,000 and so on. But in any event, you cited Pabon for whatever reason. Do you have a case now that does answer my question? I think you understood your question was to say, is there a case in the Ninth Circuit where there has been a cap and a… You know what? Anywhere in the civilized world. Then yes. In that case, I would recommend the Court read carefully Lust because Lust was… Where? …out of the Seventh Circuit. I said the civilized world. What do you cite Lust for? I've read Lust. Can you tell me what you're citing it for? Lust for the proposition that in a case, a Title VII case, where there is a cap, the Court examines the punitive damages awarded based upon the jurisprudence in that circuit, which Judge Posner did, and based upon his evaluation, to know what the facts, which Judge Posner did, to reach an amount that he deemed appropriate, the Court deemed appropriate. In that case, they cut the damages down from $270,000 to $150,000. But counsel, that goes to my first question that I asked you. In that case, what Judge Posner talked about is the need to reserve the very worst case. And perhaps it would be the case that Judge Wynn mentioned where there's a quid pro quo or something, really agree to facts, and to reserve the maximum cap for that. And it strikes me that the Court is in no position to do that with this kind of a statute because we couldn't do that if we wanted to, it seems to me, because, again, where a plaintiff has suffered and can prove compensatory damages, there won't be any room to do that at all. So how does that Lust analysis make any sense? The Lust analysis makes sense because we're talking about this issue of punitive damages. And certainly there may be other cases where there are significant compensatory damages, and as a result, low punitive damages that are allowable. That's the statutory scheme we have to live with. But in this case, or cases like it, where there are no or low compensatory damages, what's the Court's obligation? And the EEOC would have you abdicate that and say, well, if it's anything under the cap, it's fine. Or if it's a nominal damages case, you don't do any kind of analysis between what the actual damages are and what the punitive damages are. We're saying no. What the jurisprudence out there teaches, including Lust, is that in every case the courts of appeal have an obligation to examine the punitive damages and determine if they're reasonable under the circumstances. That's the advantage of what a court can do. A court can look carefully at the facts and determine, in this case, are punitive damages of this amount appropriate? And it can compare the case based upon the other jurisprudence out there and look and say, okay, what have we done in other cases? So are we comparing this result to the result reached in other cases, or are we comparing this punitive damages award, as Judge Blodack, to the reprehensibility of the conduct at issue in this case? Both, if I may. I think you're having to look at the reprehensibility of the conduct in this case, and you also have to look at the prior jurisprudence on punitive damages and decide where does this case fit within our prior jurisprudence. Thank you. You want us to follow Lust, eh? Chief Judge Posner said when Congress sets a limit on a low one on the total amount of damages that may be awarded, the ratio of punitive to compensatory damages in a particular award ceases to be an issue of constitutional dignity. You want us to adopt that rule? Well, if you notice what Judge Posner did, okay, what he did was he said that, but then he went ahead and evaluated the case based upon the other punitive damages cases in the Seventh Circuit and said I need to reduce this award down from $270,000 to $150,000 because the prior award, quite frankly, shocks me. And so that's, yes, that's what I want you to do. We don't have Judge Posner here, fortunately or unfortunately. But what you want us to do. We could invite him to come sit with us. You can have your place. But what you want us to do is to say the jury looked at this, thought it was really pretty terrible, gave an awfully high award. The judge looked at all the facts and the award and said I have to cut it down to $300,000, but certainly that's not too much. That's a proper award. And you want us as a court of appeals to say no, the jury is wrong, the judge is wrong. We think this wasn't such bad conduct and we should lower that. Is that right? That is correct with regard to the district court's findings. But it's also true that this is completely different than the Rush because there the damage, the punitives were under the cap, right? Correct. Here they've already been cut $500,000. Unless the district court actually reduced it down to the cap as well and then Judge Posner reduced it further. No, it was $273,000. He could have reduced it down to the cap. The district court had allocated the punitive compensatory damages down to the cap of $300,000. Okay. Now would you like to answer my question? Pardon? Would you now like to answer my question? I'm sorry, yes. Not for us. Yes, thank you. The reason why we're asking you to do that is because I'll give you one example. The district court concluded that our efforts to remedy this harassment were weak at best. And that's just simply not correct. If you look carefully at the facts, you'll see that Ms. Aguilar admitted. We're not asking you to construe the facts in a way that's inconsistent with her testimony. Look at her testimony. She admitted that the graffiti was painted over before she went on leave, that she saw it only three to five times. She admitted that Wayne Johnson stopped talking to her and asking her out for dates as soon as management talked to him. And she admitted that as soon as she complained about the management. I wasn't asking for that much detail. I was asking for the concept of what you want us to say is that the jury was really shocked by this conduct. It was a very high award. The district judge said, I can't give that much. I'm giving only $300,000. And then you want us to go back and look at all the facts of the case and make a judgment as the court of appeals that these facts don't really warrant even $300,000. What I'm saying is that even on its best day, even if you accept all the facts as the plaintiff has alleged them, what you have here is a case where an employee was asked out on dates by a supervisor, she complained about it, and the company stopped it. An employee who saw graffiti on three to five occasions and never reported it, but it was actually ultimately painted over before she left. An employee who didn't get along with her supervisor and the company, as a result, removed him as her supervisor. That's the best case. And what I'm saying is there are worse cases out there, and there will be worse cases. You'll have to decide. And when you get those worst cases, simple requirements of fairness require that an employer understand that I'm not subject to the highest award you can award, $300,000, unless I've engaged in the most egregious conduct. That's what we're saying. You've got to leave some room at the top of the scale, which goes to $300,000, for cases that are going to be worse because you're going to see them and you have them. You filed a petition for a hearing against the panel opinion which tried to do something like that, and you didn't like that either. You wanted it to be less than that. You wanted it to be basically nothing. Well, two thoughts on that. First of all, we're here at the court's request. Secondly, the panel. You've changed your position. Pardon? You've changed your position. No, no. I'm sorry. The $125,000 that the panel awarded was a staggering amount, particularly in light of the facts of this case and in light of the damages that she suffered. So, yes, when asked to brief this, we agreed it should be reduced further. What should the punitive damages award be in this case? The punitive damages award in this case should be something less than Mendez because we believe that the facts in this case stack up compared to Mendez, which is also the only nominal damages case in this circuit. How much was Mendez? Pardon? Remind us. How much was Mendez? Mendez, the jury awarded $250,000. The court reduced them down to $2,500. And so your answer to the question is it should be less than $2,500? Yes. Okay. On that note, we are in cases. Thanks a minute. We're adjourned. Thank you, Your Honor.
judges: KOZINSKI, REINHARDT, THOMAS, SILVERMAN, GOULD, BERZON, CLIFTON, SMITH, MURGUIA, CHRISTEN, NGUYEN